THE GARDEN CITY BANKING & TRUST COMPANY, Appellant, vs. GEILFUSS, Assignee, Respondent.

ASCHERMANN (MILWAUKEE COUNTY, Respondent) vs. COMMERCIAL BANK OF MILWAUKEE (GEILFUSS, Receiver, Appellant).

*December 1 — December 29, 1893.*

*Voluntary assignment: Banking corporation: Subsequent appointment of receiver: Distribution of proceeds.*

1. A banking corporation, created and existing under the general banking law of this state, may make a valid assignment of all its property for the benefit of its creditors.

2. Where a banking corporation has made a valid assignment of all its property for the benefit of creditors, such property cannot be sequestered and a receiver thereof appointed, under secs. 3216, 3217, S. & B. Ann. Stats., so as to supersede the assignment and change the rule for the distribution of the proceeds of the property among creditors.

APPEALS from the Circuit Court for *Milwaukee* County.

The orders appealed from in these cases relate substantially to the same subject matter. The Commercial Bank of Milwaukee, organized under the general banking law of the state, and having its office and place of business at Milwaukee, Wis., on the 21st day of July, 1893, made an assignment to *A. B. Geilfuss,* pursuant to the statute in such case made and provided, for the benefit of all its creditors, its liabilities, exclusive of interest, being about $1,183,999.37, and its assets about $1,480,220.68; and as such assignee he took possession of said assets and proceeded in the execution of his trust. The bank was indebted at the time to *Milwaukee County* in the sum of $317,484.33, but no claim therefor has as yet been filed in the matter of said assignment.

On the 5th of August, 1893, Edward Aschermann recovered a judgment against the bank in the circuit court for

*Milwaukee County* for $436.67, and execution was issued thereon to the sheriff of Milwaukee county, and thereafter returned wholly unsatisfied. On the 8th day of August, 1893, said Edward Aschermann duly filed in the circuit court, against said corporation, a petition under sec. 3216, S. & B. Ann. Stats., praying that the court might sequestrate the stock, property, things in action, and effects of such corporation, and appoint a receiver thereof, with a view to winding up and settling its affairs. An order was made by the circuit court thereon, sequestrating the stock, property, effects, and things in action of said Commercial Bank, and appointing *A. B. Geilfuss* receiver of the same, who at once qualified as required by law. *Milwaukee County* filed in said suit its claim against said bank, and by its petition alleged that said *Geilfuss,* as such receiver, had cash on hand in the sum of $125,000, and prayed that the county be declared a preferred creditor of said bank under sec. 3245, S. & B. Ann. Stats., and be first paid by said receiver accordingly.

On the 29th of September, 1893, *Geilfuss,* as assignee, filed in the circuit court his account and report in the matter of the said assignment, substantially as required by sec. 1701, S. & B. Ann. Stats., but alleged that no dividend had been paid, and that the report was made for the purpose of having it determined whether the estate was to be administered by him as receiver and distributed that way, or as assignee, and set forth the proceedings which had resulted in his appointment as receiver in the case of Aschermann against the Commercial Bank. He asked that a final settlement of the account be had upon notice, and that he be discharged as such assignee. Said matter came on to be heard before the court upon notice, and the appellants, the *Garden City Banking & Trust Company,* the *Wauwatosa Stone Company, Story Bros.,* and *Alice C. Boorse* and others, creditors of said bank, objected thereto that the as-

signee had not administered his trust, and that his subsequent appointment as receiver furnished no ground for his discharge. The court confirmed the report and account of the assignee, and, finding his petition true and that he had been appointed receiver as stated, held that his said appointment superseded the prior assignment, although it was otherwise a valid assignment, and on October 31, 1893, ordered that said *A. B. Geilfuss*, as assignee, be discharged from all further duty or liability as such, and that all the assets which he then held as assignee be turned over, accounted for, and held by him as receiver, and that from that time forth he should hold and administer the assets and property of said Commercial Bank as receiver, and not as assignee. The *Garden City Banking & Trust Company*, the *Wauwatosa Stone Company*, *Story Bros.*, and *Alice C. Boorse* appealed therefrom.

The petition of *A. B. Geilfuss*, as receiver in the case of Aschermann against the bank, came on to be heard, and the previous assignment of the bank to said *Geilfuss*, and the proceedings that had been had thereon, were set up in opposition; and he prayed that the question whether he had any funds in his hands as such receiver should be first determined upon notice to parties interested, and that in that case the question of the priority of the claim of the county be determined before any dividend should be paid. The court found the claim of the county to be as above stated, and that *Geilfuss*, as receiver, held the stock, property, things in action, and effects of the bank, and had on hand thereof, in cash, the amount of $150,000 or more; and made an order, dated November 1, 1893, that the county of *Milwaukee* be adjudged and declared to be a preferred creditor of said defendant corporation, and that said receiver pay said county, out of the funds then in his hands, the sum of $50,000 on account of said preferred claim, within three days after the service of the order.

Upon leave given, *Geilfuss*, as receiver, appealed from said order.

For the appellant *The Garden City Banking & Trust Company* there was a brief by *Van Dyke & Van Dyke*, and oral argument by *G. D. Van Dyke*. They argued that a valid assignment made by a corporation of this state is not superseded by the subsequent appointment of a receiver under sec. 3216, R. S. That a corporation may make an assignment, see Burrill, Ass. (5th ed.), sec. 64; *Powers v. C. H. Hamilton Paper Co.* 60 Wis. 23; *Conlee L. Co. v. Ripon L. Co.* 66 id. 481; *T. T. Haydock Carriage Co. v. Pier*, 74 id. 582. Nothing in ch. 80, R. S., nor in secs. 3216 *et seq.*, denies or is inconsistent with that right. On the contrary it seems to be expressly saved by sec. 3250, which provides that nothing in that chapter " shall be deemed to repeal any other remedies given by these statutes to or against corporations," etc. Conceding that a corporation had, independent of statute, the right to make an assignment, still the exercise of that right has been so regulated by statutes as virtually to make it the exercise of a new statutory right. The statute, differing from the common law, places the property *in custodia legis*, and the assignee is treated as an officer of the court. R. S. sec. 1693; *Hamilton-Brown S. Co. v. Mercer*, 84 Iowa, 537; 1 Am. & Eng. Ency. of Law, 872 and note; *Littlejohn v. Turner*, 73 Wis. 113, 123; *Hamilton-Brown S. Co. v. Adams*, 5 Wash. 333; *Hyde v. Weitzner*, 45 Minn. 35. Since the decision in *Powers v. C. H. Hamilton Paper Co.* 60 Wis. 23, 28, the statutes have conferred upon the assignee the powers then lacking, and he now has all the powers possessed by a receiver. Independently of any saving clause in the statute, the appointment of a receiver should not supersede an assignee who is virtually a receiver himself. Secs. 3216 *et seq.* were taken from ch. 114, R. S. 1849, and were there taken *verbatim* from ch. 118, R. S. of Mich. 1846. In the

Michigan Revision of 1846 these provisions are a compilation of session laws of 1837 and 1839, which were construed in *Town v. Bank of River Raisin*, 2 Doug. (Mich.), 530. See, also, *Covert v. Rogers*, 38 Mich. 363–5; *Bank of Montreal v. Potts S. & L. Co.* 90 id. 345. A general assignment vests the title to the whole of the property in the assignee. 1 Am. & Eng. Ency. of Law, 852. And the subsequent appointment of the receiver does not *ipso facto* divest such title, even when the assignment is fraudulent. *Glenny v. Langdon*, 98 U. S. 20; *Olney v. Tanner*, 10 Fed. Rep. 101.

*C. A. Koeffler, Jr.*, for the appellants *Wauwatosa Stone Company, Story Bros.*, and *Alice C. Boorse*.

For the respondent *Geilfuss*, as assignee, there was a brief by *W. H. Timlin*, and oral argument by *Mr. Timlin*, *Leopold Hammel*, and *J. G. Flanders*.

*W. H. Timlin*, for the appellant *Geilfuss*, as receiver.

*Leopold Hammel*, District Attorney, and *James G. Flanders*, of counsel, for the respondent *Milwaukee County*.

PINNEY, J. 1. The right of a banking corporation, created and existing under the general banking law of the state, to make a valid assignment of all its property and assets for the payment of its debts in the manner and form and to the effect prescribed by the statute, was very properly conceded by counsel who argued in support of the orders appealed from. Like trading, manufacturing, and other business corporations, the Commercial Bank had an absolute right of disposition of its property and assets, as full and ample as a natural person, unless restrained, expressly or by implication, by the general banking law or some other statute of the state. We have not been referred to, and do not know of, any limitation on the powers of banking or other corporations in this respect; and as the right of private corporations in general to make such assignments has been so universally recognized and supported in this

and other states, in view of the great increase of such corporations of late and the great proportion of the business of the country conducted by them, the question of the right of a banking or other private corporation to make such an assignment, if not expressly or impliedly forbidden by its charter or other positive law, must be regarded as clear and undoubted as that of a natural person. The duty of a banking or other corporation to devote all of its property to the payment of its debts stands upon the same ground and does not differ from that of a natural person, and, in the absence of any restriction, is one of the implied powers of the corporation.

2. It is not contended that the assignment in question is subject to any legal infirmity or taint of fraud, but the entire controversy grows out of the claim that the proceedings instituted in the case of Aschermann against the bank, several days after the assignment was perfected, in which the stock, property, things in action, and effects of the bank were sequestered, as it is claimed, and *Geilfuss* (already the assignee of the bank under its assignment) was appointed receiver of the same, operated to supersede and vacate the assignment and impose upon the property and assets of the bank a different rule of distribution from the one prescribed by the assignment, so as to entitle *Milwaukee County* to a preference of payment under the statute (S. & B. Ann. Stats. secs. 3217, 3245) relating to proceedings against corporations.

By the statute (S. & B. Ann. Stats. sec. 1693a) it is provided that all preferences in assignments for the benefit of one creditor over another, "except for the wages of laborers, servants and employees earned within six months prior thereto, shall be void;" and, by sec. 1693c, that "the claims of all servants, clerks, or laborers for personal service or wages owing from the assignor for services or labor performed for the three months preceding such assignment,

shall be preferred over the claims of all other creditors, and shall be paid first by the assignee, after the payment of costs, *debts* due the United States or the state of Wisconsin, all *taxes* and assessments levied and unpaid, expenses of the assignment and executing the trust." It is plain that, had the instrument of assignment directed a preference of payment of the debt of the bank to *Milwaukee County* over its general creditors, the assignment would have been absolutely void, and it is very certain that in the absence of such provision any such preference of payment allowed by the assignee would be a palpable abuse of his trust and a conversion of trust funds for which his bondsmen would be liable. Considerations of public policy and the inconvenience which may flow from this conclusion cannot be allowed to prevail against the plain and positive language of the statute. We cannot look elsewhere for a declaration of the public policy of the state; and the language of the statute, allowing preferences in certain cases only, has a negative force and denies them in all others. If, however, the proceeds of the property and assets so assigned are to be administered and distributed by the receiver under the authority of the court in the action of Aschermann against the bank, it is claimed that a preference of payment is prescribed by secs. 3217 and 3245, already referred to, over all other claims, "for the payment of *taxes* and *debts* due to the United States and the state of Wisconsin, and any county, city, town, or village therein."

It is a matter of no importance to the decision that the circuit court having jurisdiction of the proceedings in the voluntary assignment also appointed the receiver, nor that the assignee is the same person afterwards so appointed. The controversy in these cases resolves itself into the single question whether the proceedings in the case of Aschermann against the bank superseded or vacated the prior assignment, or furnished any ground for an adjudication to

that effect.  It must be conceded, we think, that the as-
signment by the bank vested the stock, property, things in-
action, and effects of the bank in *Geilfuss*, as assignee, in
trust for all its creditors, and that they thereby acquired
in a perfectly lawful and proper manner, and upon a valid
consideration, a vested right to have the same converted
into money and applied *pari passu* to the payment of their
respective debts.  · Their rights were as clearly and as cer-
tainly fixed in this respect, beyond the power of the assignor
or any one else to recall or revoke them, as if they had
been secured to them by a valid mortgage of the property
regularly executed.  Courts of law would recognize the
legal title of the assignee, and protect him in his legal own-
ership of the property assigned; and elaborate provisions
exist for the execution of the trusts of the assignment under
the supervising direction and authority of the circuit court.
All actions for the recovery of the assigned estate or any
interest therein, or for the recovery of property conveyed
or transferred in fraud of creditors, or the transfer or con-
veyance of which is void by reason of being preferential or
otherwise, are required to be brought only in the name of
the assignee.  S. & B. Ann. Stats. sec. 1693*b; Valley Lum-
ber Co. v. Hogan*, 85 Wis. 366.  If necessary, the court could
remove a delinquent assignee and appoint another.  S. &
B. Ann. Stats. sec. 1702.  In brief, elaborate and efficient
provisions exist for the conversion of all the estate assigned
into money, and a fair and legal application of it to the
payment of the debts of the bank.  No occasion whatever
is shown to have existed for the interference of a court of
equity to protect the rights and interests of those interested
in the trusts of the assignment, or any reason why they
should not be fully executed, unless the sequestration of
the property of the bank and appointment of a receiver in
the case of Aschermann against the bank have the ex-
traordinary effect ascribed to them, and wholly destroy, or

furnish ground for subverting, the trusts of an assignment free from any taint of fraud or imputation of illegality.

3. The statute (S. & B. Ann. Stats. secs. 3216, 3217) under which the proceeding in the case of Aschermann against the bank was instituted is purely remedial, and gives no countenance to the idea that prior lawfully existing rights are to be displaced or in any manner disturbed by it; nor is there any authority, so far as we are advised, for holding that such a proceeding is designed to have any retroactive effect; nor is it either necessary or just that it should have such effect. It is quite sufficient, for all purposes of justice, that the remedy should be as broad, comprehensive, and complete as upon a creditors' bill or in a bankruptcy proceeding. The title of a receiver or assignee under such proceedings has no retroactive effect to disturb prior existing rights, unless they are in fraud of creditors or in contravention of some express statute. It is provided, in substance, that after judgment against a corporation and execution thereon returned unsatisfied in whole or in part, upon petition or action brought, the circuit court within the proper county "may sequestrate the stock, property, things in action, and effects of such corporation, and appoint a receiver of the same;" that is to say, the court may take and set aside the property of the corporation from its custody or possession, or from the possession of any contending parties, and take possession of it, in order to enforce obedience to the final judgment or to preserve it during the time the proceeding is pending, and the court may appoint a receiver of the same. The same general rules apply to a sequestrator as to a receiver. In the final order in any such action, "the court shall direct a just and fair distribution of the property of such corporation and of the proceeds thereof to be made among the fair and honest creditors of such corporation in proportion to their debts respectively, who shall be paid in the order prescribed in section 3245," which

provides for preferences other and different from those allowed in voluntary assignments.

Now, the property and assets of the corporation, as we have seen, had wholly passed to and become vested in *Geilfuss* as assignee. The corporation had no property which could go to sequestrators or a receiver under such a proceeding, and it was not the intention of the statute that the court should sequestrate in this proceeding, and appoint a receiver for, property which the corporation had lawfully and honestly conveyed to other parties for entirely proper and legitimate purposes. The ends of justice require no such extraordinary or unusual construction of this statute. The statute contemplates and requires only that an administration of the property and of the affairs of the corporation shall be had, and that all *its* property and effects which it had and owned at the time of the commencement of the proceedings shall go into the hands of the receiver when appointed, and be converted and applied to the payment of its fair and honest creditors in the order specified. The title which a receiver takes under a proceeding of the kind in question is very fully, and, as we think, completely, defined in the case of *Powers v. C. H. Hamilton Paper Co.* 60 Wis. 28, in which it is held that the powers of such receiver " are far more extensive than those of an assignee in a voluntary assignment " as they then existed, and he had " the powers, and performed the functions, of a receiver in a creditors' suit proper, or on proceedings supplementary to execution; " and that he may, " under the direction of the court, maintain an action against any person holding any property of the defendant corporation in secret trust for it, or to recover any property which has been conveyed by it in fraud of its creditors." It is very true that in such a proceeding the court may lawfully assert, through its receiver, authority and control over all property of the corporation, and restrain all other actions or proceedings con-

cerning the same; yet the ultimate relief to be granted in
favor of creditors is simply the conversion of *the property
of the corporation* into money, and its appropriation to the
payment of its debts in the manner specified in the statute.
It is laid down, as a general principle applicable to re-
ceivers, that " the appointment of a receiver does not op-
erate to divest liens previously acquired on the property of
the debtor by other creditors acting in good faith, but it is
regarded as having been made subject to such rights and
liens as may have been previously acquired by other judg-
ment creditors, who will not be divested of their liens by
virtue of the subsequent receivership;     . .    and, in gen-
eral, it may be said that a receiver over a debtor's property
occupies the same relation towards the proceeds or fund
derived from it as the debtor himself." The receiver can
obtain no other or greater rights, save in the case of
property fraudulently transferred or conveyed (High, Rec.
§ 440, and cases cited); and when a receiver has been ap-
pointed under this statute the title to all the property of
the corporation vests in him as trustee for the benefit of
creditors and stockholders. He holds the property of the
corporation for the benefit of all the parties interested in
it. Beach, Priv. Corp. §§ 772, 786. The appointment of a
receiver has been said to be an equitable execution. The
receiver is virtually a representative of the court and of all
the parties in interest in the litigation wherein he is ap-
pointed. Tayl. Priv. Corp. § 542; *Davis v. Gray*, 16 Wall.
203, 218. Manifestly this equitable execution cannot go,
in a proceeding such as this, against property the corpora-
tion did not own at the time it was instituted. He has no
power to set aside legal and valid acts of the debtor, but
such as are illegal and forbidden by law he can successfully
assail. Edw. Rec. 365; 2 Story, Eq. Jur. § 829. In *Wis-
wall v. Sampson*, 14 How. 64, it is laid down that a receiver
will be appointed against a party having possession under

legal title, if the court is satisfied that such party has wrongfully obtained that interest in the property; thus, where fraud can be proved, and immediate danger is likely to result if possession pending the litigation should not be taken by the court in the mean time.   The effect of the appointment in such a case is not to oust any party of his right to the possession of the property, but merely to retain it for the benefit of the party 'who may ultimately appear to be entitled to it; and, when the party entitled to the estate has been ascertained, the receiver will be considered his receiver, and the master will be usually directed to inquire what incumbrances there are affecting the estate, and into the priorities, respectively; but, without some equitable showing, no receiver can be appointed against the legal title, and certainly none where, as in this case, it is admitted that it was honestly and legally acquired.

It follows from these views that upon the conceded facts the property, assets, and effects assigned to *Geilfuss*, as assignee for the benefit of the creditors of the bank, could not by any possibility be sequestered in the *Aschermann Case*, or the receivership in it extended over the same.   The assignee was the owner of this property by title not subject to any infirmity or condition subsequent, and when the receiver was appointed in the *Aschermann Case*, so far as we are advised, the corporation had no stock, property, things in action, or effects whatever.   All its property, by the assignment, had lawfully passed to a third party; and, although it continued to exist as a corporation, it is scarcely to be presumed, and it is not claimed in fact, that it had acquired new capital or property with which to conduct or carry on any business within the few days that intervened between the date of the assignment and the appointment of the receiver.

The case of *Ballin v. Loeb*, 78 Wis. 404, was relied on to show that the proceedings in the *Aschermann Case* operated

to supersede and vacate the assignment, and that therefore
the proceeds of the property of the bank should be distrib-
uted according to sec. 3245.  Although in the opinion in
that case there is some general language commending a
fair and equal distribution, and denouncing as more selfish
than just that kind of diligence by which one creditor of
an insolvent corporation secures to himself a prior right to
its property and an unequal advantage over the other cred-
itors, yet it will be found, upon a careful examination of
the case, that it does not support the contention for which
it is cited.  After very properly maintaining the right of
the court to enjoin all other creditors from pursuing reme-
dies, and holding that officers of the corporation may be
compelled to deliver to the receiver all property of the cor-
poration held by them on attachment or execution, the real
point and effect of the decision is thus stated: "It [the
property of the corporation] is all sequestered, and all of
it must go into the hands of the receiver, to be disposed of
by him alone as officer of the court, and all persons having
any of the property must be ordered to deliver it to him.
All proceedings by any other creditors, in any other way,
or in any other court, must be restrained; and, if a sheriff
or other officer have any of the property in his hands under
such proceedings, it must be delivered to the receiver; *and
all such other creditors must come into this action for any
share of the property, or for any remedy, else this proceeding
would be ineffectual.*"  So, it is there held that the liens and
rights of other creditors lawfully acquired against the
property of the corporation will follow it into the hands
of the receiver, and be recognized and enforced in the usual
method upon an intervening petition.  The liens and rights
of such parties, if valid, attach to the fund in the hands of
the receiver, and it will be administered accordingly. *Wall-
ing v. Miller*, 108 N. Y. 173, 177.  To the same effect is *Wis-
wall v. Sampson*, 14 How. 66, 67, where it is held that "the

property is a fund in court to abide the event of the litigation.
. . . It is true, in administering the fund, the court will
take care that the rights of prior liens or incumbrances
shall not be destroyed, and will adopt the proper measures,
by reference to the master or otherwise, to ascertain them
and bring them before it. Unless the court be permitted
to retain the possession of the fund, thus to administer it,
how can it ascertain the interest in the same to which the
prosecuting judgment creditor is entitled, and apply it
upon his demand?" And the same rule has been recently
applied in the case of *Ellis v. Vernon Water Co.* 23 S. W.
Rep. 858, 862, where it is said· "The receivership does
not destroy any liens that may have been acquired before
the appointment, but the remedy for their enforcement
should be sought in the court in which the whole estate
is being administered." This, in substance, is the rule
announced in *Ballin v. Loeb*, 78 Wis. 404, and shows that
the liens against the property in such a case are not vacated;
and, as to the assignment in question in *Ballin v. Loeb*, it
appeared that it was collusive and the result of a conspir-
acy with the corporation and its directors to obtain an un-
just preference over other creditors, and was therefore
fraudulent and void. *Ballin v. Loeb* does not justify the
conclusion that the assignment of the bank to *Geilfuss* was
vacated or affected in the slightest manner by the subse-
quent proceedings in the *Aschermann Case*, and wholly fails
to show that the receiver in that case, as such, has any au-
thority whatever to interfere with the property assigned
or its proceeds. Any other rule would be productive of
wrong and injustice, and introduce into the administration
of estates assigned by corporations for the benefit of their
creditors great embarrassment and uncertainty.

It follows, from these views, that the order of the circuit
court appealed from by the *Garden City Banking & Trust
Company* and others in the matter of the assignment of the

Commercial Bank of Milwaukee must be reversed, and the cause remanded to the circuit court, with directions that the assignee proceed in his capacity as such, and not as receiver, to administer the assets and property of said Commercial Bank according to law, notwithstanding his appointment as such receiver, and that this cause be remanded for further proceedings according to law.

It is manifest that the receiver, *Geilfuss*, did not, as such, have the possession and control of the stock, property, things in action, and effects of the Commercial Bank of Milwaukee theretofore assigned to him as assignee, and had not on hand any money whatever that should be ordered to be paid over in the case of Aschermann against the bank. Whether the claim of *Milwaukee County* against the bank is a preferred one, under sec. 3245, is not determined, as at present it does not appear that there is or will be any fund to distribute under that section, and as yet the question is an abstract and not a practical one. Should occasion require, this claim may be renewed. The order that *Geilfuss*, as receiver in that case, pay to *Milwaukee County* the sum of $50,000 on account of its alleged preferred claim, is erroneous and must be reversed, and the cause remanded for further proceedings according to law.

*By the Court.*— Judgment in these cases is ordered accordingly.