### Goetz, Assignee, Respondent, vs. Knie, Appellant.

*May 17 — June 2, 1899.*

*Corporations: By-laws: Directors: Voluntary assignment.*

1. The board of directors of an insolvent corporation has power to make a voluntary assignment of all its property for the benefit of its creditors, without the authority or consent of its stockholders, unless restrained by its charter, or other legal enactment.

2. The by-laws of a corporation, providing what officer shall sign deeds, contracts, leases, and certificates of stock when made by the corporation and authorized by the stockholders, do not prohibit the board of directors from making a voluntary assignment for the benefit of creditors, and designating the officers to execute it on behalf of the corporation.

3. Where all the property of a corporation is insufficient in amount, at a fair valuation, to pay its debts, it is insolvent within the definition prescribed by sec. 1694c, Stats. 1898.

APPEAL from an order of the circuit court for Milwaukee county: D. H. JOHNSON, Circuit Judge. *Affirmed.*

The facts are stated in the opinion.

For the appellant there was a brief by *Ryan & Merton*, and oral argument by *T. E. Ryan.*

For the respondent there was a brief by *Bloodgood, Kemper & Bloodgood*, attorneys, and a brief signed also by *Jackson B. Kemper* and *Fr. Bloodgood, Jr.*, of counsel, and oral argument by *Francis Bloodgood, Jr.*

CASSODAY, C. J. This is an appeal from an order, dated December 4, 1897, refusing to vacate and set aside a voluntary assignment for the benefit of creditors made October 16, 1897, by the board of directors of the Waukesha Stone Company to the plaintiff, *A. William Goetz, Jr.* The following facts appear from the record: The company was incorporated in the spring of 1889 with a capital stock of $100,000, divided into 1,000 shares of $100 each. At the

time of filing the petition herein by the appellant, November 24, 1897, one share of such stock was owned by the appellant, *Augusta Knie;* 396 shares by Fred Kraus; 202 shares by the husband of the appellant, Oscar Knie; thirty-five shares by Daniel Mayer, and 366 shares by the Nunnemacher estate. Such stockholders, respectively, had only paid into the corporation $30 per share, leaving an unpaid balance on each share of $70, for which the several stockholders were still liable to the corporation. The aggregate indebtedness of the corporation at that time only amounted to $42,240.30. There were outstanding accounts and debts owing to the corporation to the aggregate amount of $5,689.38. At that time there were in force, among others, the following by-laws: "Art. 7. The board of directors may, from time to time, adopt such rules and regulations for the management of the business of such corporation as they may deem necessary, not inconsistent with these by-laws or the articles of incorporation. The majority of the board of directors shall constitute a quorum for the transaction of any business, and such directors shall be authorized to hold and meet at any time when any two of them are present for the transaction of any business." "Art. 9. All deeds, contracts, leases, and certificates of stock made by this corporation, and authorized by the stockholders of the same, shall be signed by the president and secretary thereof, and sealed with the corporate seal of this corporation; and it shall not be lawful for any other officer or person to sign or to make deeds, contracts, or leases, or issue certificates of stock, without the previous written authority of such stockholders." A special meeting of the board of directors was held at the office of Frederick Kraus, Mitchell Building, in the city of Milwaukee, October 16, 1897, at 10 o'clock a. m., pursuant to a written consent signed by all of the directors of such corporation, of which the following is a copy to wit:

"We, the undersigned, who constitute the entire board of

directors of the Waukesha Stone Company, hereby waive notice of a meeting of the board as provided for in the by-laws of the said corporation, and consent that a meeting be held at the office of Frederick Kraus, Mitchell Building, Milwaukee, Wisconsin, at 10 o'clock a. m., October 16th, 1897; the purpose of said meeting being to discuss the financial affairs of said corporation.

[Signed]                           "OSCAR KNIE,
                                   "DAN. MAYER,
                                   "F. KRAUS,
                                        "Directors."

All of said directors were present at that meeting, and resolutions were offered, seconded, and adopted wherein it was recited, in effect, that the Nunnemacher estate, holding and owning a mortgage (of $15,000) covering property of the company, was threatening foreclosure, and that the company was indebted to sundry other persons and firms, and was then unable to pay the same, and was insolvent. Therefore it was resolved that the corporation make, execute, and acknowledge a voluntary assignment, under and pursuant to the statutes relating to voluntary assignments, of all its property, assets, effects, and credits, for the benefit of its creditors, without preferences; that the president and secretary be, and they were thereby, authorized, empowered, and directed, for and in behalf and in the name of the corporation, to make, execute, acknowledge, and deliver to *A. William Goetz, Jr.*, as assignee, a voluntary assignment of all the property, effects, and credits of the company for the benefit of its creditors. Such assignment was thereupon made and executed on that day. *A. William Goetz, Jr.*, thereupon duly qualified and accepted such trust, and entered upon the duties of his office as such. November 19, 1897, he procured an order from the court to make sale of all the property and assets of the corporation. Upon the verified petition of the appellant, *Augusta Knie*, and upon other affidavits and papers showing

Goetz vs. Knie.

the facts stated, the appellant prayed that the order of November 19, 1897, and all proceedings in such assignment matter, be vacated and set aside and held for naught, and that the property in the hands of the assignee be returned to the corporation. From the order denying such petition, *Augusta Knie* appeals.

Several years ago, and after very careful consideration, this court held that a corporation created and existing under the laws of this state might make a valid assignment of all its property for the benefit of its creditors, and that rule has been steadily adhered to. *Garden City B. & T. Co. v. Geilfuss*, 86 Wis. 612; *Ballin v. Merchants' Exch. Bank*, 89 Wis. 278; *Barth v. Enger-Kress Co.* 92 Wis. 229; *In re Ellis*, 97 Wis. 92. In the first of these cases it is said that the right to make the assignment "was very properly conceded," and that, "like trading, manufacturing, and other business corporations, the Commercial Bank had an absolute right of disposition of its property and assets, as full and ample as a natural person, unless restrained, expressly or by implication, by the general banking law, or some other statute of the state." Page 616. The opinion then goes on to show that there is no such restraint, and we find none in the statutes. S. & B. Ann. Stats. secs. 1693–1702*k*, 1748, 1749. Other courts have sanctioned the same proposition. *Dana v. Bank of U. S.* 5 Watts & S. 223; *Merrick v. Bank of Metropolis*, 8 Gill, 59; *Wright v. Lee*, 2 S. Dak. 596; *Boynton v. Roe* (Mich.), 72 N. W. Rep. 257. In these cases it was held that the board of directors of an insolvent corporation has power to make a voluntary assignment of all its property for the benefit of its creditors, without the authority or consent of its stockholders, unless restrained by its charter or other legal enactment. The by-laws quoted do not undertake to prohibit the board of directors from making such assignment. It simply provides what officers shall sign the instruments therein mentioned, when made by the corpora-

Goetz vs. Knie.

tion and authorized by the stockholders. The assignment in question was signed by such officers after being authorized, empowered, and directed to do so by the full board of directors. Text writers seem to agree, substantially, in the " conclusion that it is within the *discretionary power* of the directors to make an assignment of all the assets of the corporation for a ratable distribution among its creditors, without the assent of the stockholders, unless the charter or governing statute enacts or implies the contrary,— though there is some opposing authority. . . . It has been held that the directors may make such an assignment, even in opposition to the will of the shareholders." 5 Thomp. Corp. § 6473; 3 Thomp. Corp. § 3986. " A by-law requiring that contracts be made only by certain officers, or that certain formalities shall be observed, is usually of little avail as against outside parties. Persons contracting with the corporation are not bound to know of the by-law, and the courts are reluctant to invalidate a contract by reason of it." 2 Cook, Corp. (4th ed.), § 725; 2 Cook, Stock (3d ed.), § 725. The controversy here is between the stockholders. Creditors are not complaining. If the assets are insufficient to pay all creditors, they may undoubtedly enforce the collection of unpaid subscriptions.

Upon the showing made, it is very obvious that the corporation was insolvent as to the stockholders. *Sawyer v. Hoag,* 17 Wall. 610; *Scovill v. Thayer,* 105 U. S. 143; *Skrainka v. Allen,* 76 Mo. 384; *Minneapolis P. Co. v. Swinburne P. Co.* 66 Minn. 378; *Jackson v. Traer,* 64 Iowa, 469. The corporation's property was insufficient in amount, at a fair valuation, to pay its debts; and hence it was insolvent, within the definition prescribed by the statute (Stats. 1898, sec. 1694c).

We perceive no error in the ruling of the trial court.

*By the Court.*— The order of the circuit court is affirmed.