### WINDMULLER et al. v. STANDARD DISTILLING & DISTRIBUTING CO. et al.

#### (Circuit Court, D. New Jersey. March 12, 1902.)

1. CORPORATIONS—STATUS OF STOCKHOLDERS—RIGHT TO VOTE.
   Stockholders of a corporation, unlike directors, are not trustees for the other stockholders, but each represents his own interest only in stockholders' meetings, and may vote on any measure, even though he has a personal interest therein separate from, or adverse to, that of other stockholders.

2. SAME.
   A corporation which, as permitted by the laws of the state, owns the common stock of a second corporation, is not deprived of the right to vote such stock in favor of dissolution, because, as a consideration for its stock, it guarantied the payment of dividends on the preferred stock of the second corporation so long as the latter should exist.

3. SAME—DISSOLUTION—POWER OF COURT TO ENJOIN.
   The general corporation act of New Jersey provides that any corporation may be dissolved whenever deemed advisable by the board of directors, provided two-thirds in interest of all the stockholders shall consent thereto at a meeting called for the purpose. *Held*, that a court of equity had no power to review the decision of the board of directors of such a corporation as to the advisability of dissolution or to enjoin such dissolution at the suit of a minority stockholder.

In Equity. On rule to show cause against issuance of injunction.

James E. Howell and Robert H. McCarter, for complainants.
Charles E. Deming, Levi Mayer, and R. V. Lindabury, for defendants.

KIRKPATRICK, District Judge. The complainants are the holders of certain shares of the first and second preferred stock of the Spirits Distributing Company, a corporation organized under the laws of the state of New Jersey, upon which the Standard Distilling & Distributing Company have guarantied a dividend of 6 per cent. upon the first preferred, and 2 per cent. upon the second preferred, stock, during the existence of the said Spirits Distributing Company. It appears from the record that in 1896 the Spirits Distributing Company had an authorized capital of $7,350,000, of which there was outstanding, in the early part of 1899, $1,050,000 of first preferred, 7 per cent. cumulative stock; $1,575,000 of 6 per cent., noncumulative second preferred stock; and $3,675,000 of common stock. Among its sources of revenue was a contract with the American Spirits Manufacturing Company, under the terms of which it received a minimum payment of $100,000 annually, which was to continue for a period of 45 years, unless sooner terminated by a vote of three-fourths of the stock of the said Distributing Company. It also appears that, even with the receipt of the $100,000 provided to be paid by the Spirits Manufacturing Company, the Distributing Company, from the time of its organization until the early part of 1899, had never been in funds with which to pay in full the dividends upon its first preferred stock, nor any part of the dividends upon its second preferred stock. It was proposed, about December, 1898, by one C. H. Eicks, that the stockholders of the Distributing Company should surrender their right to receive 7 per cent. on their first preferred stock and 6 per cent. on their second preferred stock, and that in lieu thereof they should agree to take 6 per cent. on their first preferred and 2 per cent. on their second preferred stock; and, as an inducement for them so to do, he proposed that the said stockholders should surrender to the Standard Distilling & Distributing Company, which had then but recently been organized with a capital of $24,000,000, all of their common stock in the Distributing Company, which constituted a majority of the whole. He also said to them that in consideration thereof the Standard Company would guaranty the said dividends on the first and second preferred stock, as aforesaid, to the said stockholders during the existence of said Distributing Company. In order to carry out this plan, it became necessary that the charter of the Distributing Company should be amended, and the same was accordingly done, with the consent of every one of its stockholders, including these complainants.

The agreement between the stockholders of the Distributing Company and the Standard Company was carried into effect. The old stock of the Distributing Company was surrendered to its officers, and new stock issued to the shareholders, upon which was stamped the guaranty of the Standard Company, and the common stock of the Distributing Company, being a majority of the whole, was transferred to the Standard Company. From January, 1899, to the date of the filing of the bill, the Standard Company has paid to the complainants the dividends upon their stock in the Distributing Company, as provided in the agreement. The Standard Company took charge of the business of the Distributing Company by qualifying and electing as directors a majority of the board. During the time of their control

the business of the company has been successfully prosecuted, and its earnings have so largely increased that during the fiscal year ending June 30, 1901, it showed a profit of upwards of $30,000. No complaint is made in the bill of the manner in which the property has been administered.

In June, 1899, the Distilling Company of America was organized, and it became the owner of $22,742,750, par value, of the $24,000,000, par value, of the stock of the Standard Company, above referred to. It also became the owner, by purchase, of $2,592,650, par value, of the first and second preferred stock of the Spirits Distributing Company; so that at the time of the filing of this bill the stock of the Spirits Distributing Company was held as follows: By the Distilling Company of America, first and second preferred, $2,592,650; by the Standard Company (of which the Distilling Company, as has been said, owned nearly all the stock), $3,675,000 common stock; leaving outstanding stock of all kinds to the amount of $232,350, of which the complainants hold but 1,524 shares, 324 of which is first preferred, and 1,200 second preferred.

At a meeting of the board of directors of the Distributing Company it was resolved that, in the judgment of the directors, it was most advisable and for the benefit of the corporation that it should be dissolved. In accordance with the general corporation act of New Jersey, a meeting of the stockholders was called to vote upon the propriety of adopting such a course. The prayer of the complainants' bill is that the Standard Company may be enjoined from voting upon its $3,675,000, par value, common stock in favor of said proposition, because it has guarantied the dividends on the stock of the Distributing Company as aforesaid, and that the Distilling Company be enjoined from voting upon its $2,592,650, par value, of first and second preferred stock, which it has purchased and owns, because it also owns a majority of the stock of the Standard Company, which is the guarantor thereof. That is to say, however advisable and for the benefit of the corporation it may be that the same should be dissolved, yet it cannot be done because two-thirds of the stockholders whose votes are necessary to accomplish such result are disqualified from voting by reason of their interest in the cancellation of a guaranty which the complainants now conceive to be adverse to their interests. To carry the doctrine to its logical conclusion would be to hold that, if the guarantor's company and those who own a majority of the stock in the guarantor's company should also be the owners of all the stock in the guarantied company except one share, the owner of that one share could prevent the dissolution of the company forever, if its charter were perpetual, or compel its operation at a loss until all its assets were wasted or consumed. Section 51 of the general corporation act of New Jersey provides that any corporation organized under it "may hold the shares of any other corporation of that or any other state," and, while the owner thereof, "may exercise all rights, powers, and privileges of ownership, including the right to vote thereon." In respect to the voting power, the rights of a corporation are identical with the rights of an individual, and only those reasons would operate to prevent a corporation from voting on its

stock which would effect the same object if the stock was held by an individual.

I have not been referred to any authority which holds that one stockholder is in any sense a trustee for other stockholders, or that he is debarred from voting on his stock according to what he may conceive to be his interest, or in a way which may result in a benefit to himself, and which other stockholders may not enjoy. Directors, by whomsoever elected, are the representatives of all the stockholders, and, as such, are charged with the duty of administering the affairs of the company for the equal benefit of their cestuis que trustent. But the doctrine is new that the stockholders are trustees one for another, or that an interest of one stockholder, which in the judgment of another stockholder may seem to be adverse to his own, can operate to prevent him from voting on his own stock as he sees fit.

In the case of Transportation Co. v. Beatty, 12 App. Cas. 589, one of the directors owned a majority of the stock of the corporation, and at a meeting of the shareholders, by reason of his majority, he caused to be passed a resolution ratifying a contract to sell to the company, upon advantageous terms, a vessel belonging to himself. In passing upon the propriety of his right to vote, the court said:

"Unless some provision to the contrary is to be found in the charter or other instrument by which the company is incorporated, the resolution of a majority of the shareholders, duly convened, upon any question with which the company is legally competent to deal, is binding upon the minority, and consequently upon the company; and every shareholder has a perfect right to vote upon any such question, although he may have a personal interest in the subject-matter opposed to or different from the general or particular interests of the company. A shareholder has a perfect right to exercise his voting power in such manner as to secure the election of directors whose views on policy agree with his own, and to support those views at any shareholders' meeting."

The court cannot be called upon to manage the internal affairs of corporations, or to determine whether this or that stockholder is disqualified from voting upon one or another question which may be presented to the stockholders for their consideration by reason of his own interest. If the directors, who are the trustees of all, conspire with a few or some of the stockholders to deprive the others of their property, the court will interfere to see that justice is done. The court will not permit the directors to divert the business of the corporation so that a sale and sacrifice of its assets will become obligatory, and the distribution of the proceeds unequal among its shareholders. This is the doctrine which is at the foundation of the opinion in the case of Farmers' Loan & Trust Co. v. New York & N. R. Co., 150 N. Y. 410, 44 N. E. 1043, 34 L. R. A. 76, 55 Am. St. Rep. 689, and Ervin v. Navigation Co. (C. C.) 27 Fed. 625.

No case has been brought to the attention of the court where any stockholder has been deprived of his right to vote on his stock in such a way as may, in his opinion, best subserve his own interests. He may vote his stock as he pleases for the purpose of his own interest, but he may not sell, or cause to be sold, assets and keep the consideration. Menier v. Telegraph Works, 9 Ch. App. 350. In Gamble v. Water Co. (N. Y.) 25 N. E. 201, a stockholder's right to

vote was questioned because of interest, and the court of appeals, reversing the decision of the lower court, said:

"A shareholder has a legal right, at a meeting of shareholders, to vote upon a measure, even though he has a personal interest therein separate from other shareholders. At such a meeting each shareholder represents himself and his own interests, and he in no sense acts as the representative of others. The law of self-interest has at such time very great and proper sway. There can be little doubt, too, that at such meetings those who do vote on their own stock vote upon it in the light solely of their own interest, or at least in what they conceive to be their own interest."

In the case at bar the court is not in possession of facts which would enable them to determine whether the interests of the corporation, as distinct from the interests of the individual shareholders, require that it should be dissolved. Under the general corporation act of the state of New Jersey, any corporation may be dissolved whenever in the judgment of the board of directors it shall be deemed advisable and most for the benefit of such corporation that it should be dissolved; provided that, at a meeting of the stockholders called for the purpose of passing upon the propriety of such dissolution, two-thirds in interest of all the stockholders shall consent thereto. Laws 1896, c. 185. There is no provision in the law which authorizes the court to review the judgment of the directors as to the advisability of dissolution. And in 4 Thomp. Corp. § 4443, it is said:

"It is believed that no case can be found in which a court of equity has granted an injunction at the suit of a minority stockholder against the majority to prevent them from discontinuing the business of the corporation and winding up its affairs."

It is urged in behalf of the complainants that it would be inequitable to allow the Standard Company, after having received a valuable consideration for their guaranty, by their own act to dissolve the corporation, and thereby cancel its said obligation. But it must be remembered that, in the proposition made to the stockholders of the Distributing Company by Mr. Eicks, Mr. Eicks said that, if such stockholders would consent to a reduction of the rate of their dividends, he would procure the Standard Company to guaranty and pay, during the existence of the company, dividends at the rate of 6 per cent. per annum on the first preferred, and 2 per cent. per annum on the second preferred, stock of the Distributing Company. To that proposition the complainants assented, and they did so with the knowledge that at any time, under the laws of the state of New Jersey, two-thirds in interest of the shareholders of the Distributing Company could dissolve the company, and thereby put it out of existence. They are in no position to complain if, in accordance with the terms of the agreement, the Standard Company and the Distilling Company, who are the stockholders of the Distributing Company, propose to put an end to their liability thereunder.

Other reasons are urged in behalf of the defendant company why this injunction should not be granted, but, having come to the conclusion that the Standard Company and the Distilling Company of America are not prohibited from exercising their right to vote at the stockholders' meeting upon the question of dissolution submitted by

the board of directors, it is not necessary to enter into any discussion of them.

For the reasons already stated, therefore, the rule to show cause in this case must be discharged.