WERLE, Appellant, vs. NORTHWESTERN FLINT & SANDPAPER COMPANY and others, Respondents.

*September 12—October 3, 1905.*

*Corporations: Minority stockholder: Conveyance of corporate property to stockholder: Amendment of articles of incorporation: Effect of failure to record.*

1. In an action by a minority stockholder to set aside a sale of the entire corporate property to a stockholder, under the evidence, stated in the opinion, the sale is *held* to have been free from fraud, deceit, circumvention, or undue influence, and made in good faith and with the purpose of safeguarding the rights and interests of all stockholders.

2. When authorized in conformity to sec. 1775, Stats. 1898 (declaring that every corporation shall have the powers of a corporation conferred by statute necessary or proper to conduct the business or accomplish the purposes prescribed by its articles, and may, by a vote of a majority of the stock given at any regular meeting or at a special meeting called for the purpose, sell and convey or authorize to be conveyed all or any portion of the property owned by it, whether real, personal or mixed), a corporation may sell and convey all of its corporate property to a stockholder.

3. The mere fact that such stockholder afterwards sold and conveyed the property so purchased to a new corporation, organized by himself and other stockholders of the vendor corporation, does not render the sale void.

4. A sale and conveyance of all the corporate property to a stockholder cannot be set aside merely because of a delay of ten months in recording an amendment to its articles of incorporation, authorizing an increase of its capital stock and changing the number of its directors, where it appears that the corporation was originally legally incorporated and organized, and continued as such corporation during all the time in question, and the sale was made by *de facto* directors acting under due authority of a lawful stockholders' meeting.

APPEAL from a judgment of the circuit court for Marathon county: W. C. SILVERTHORN, Circuit Judge. *Affirmed.*

This is an appeal from an interlocutory judgment refusing to set aside the conveyance, bill of sale, and transfer of the

property of the defendant company to the defendant *Kuckuk*, and adjudging that the same "were made in good faith, pursuant to law, without any fraud or undue haste, and were lawful acts" of the company, and were thereby "sustained and confirmed as valid transfers and conveyances." The facts upon which such judgment was based were found by the court, or are undisputed, and to the effect: That the defendant company was incorporated and organized under the laws of this state, February 16, 1900, with a capital stock of $35,000, divided into 350 shares of $100 each, and nonassessable. That at its first meeting of stockholders, February 20, 1900, there was elected a board of three directors, one of whom, *Eichert*, was chosen president and treasurer, and to whom $20,000 of such stock, consisting of 200 shares, was issued; another, *Werle*, the plaintiff herein, as secretary, to whom $10,000 of such stock, consisting of 100 shares, was issued; and the other was one Genrich, to whom $1,000 of such stock was issued. That April 9, 1900, the articles of incorporation were amended so as to increase such capital stock to $50,000. That January 21, 1901, such articles were again amended by increasing the capital stock to $100,000, and also increasing the number of directors to five, and thereupon *Eichert, Werle, Curtis, Johnson,* and *Albers* were regularly elected as such directors, and the board then chose *Eichert* as president, *Johnson* as vice-president, and *Albers* as secretary and treasurer. That such amendment was regularly made in all respects, except the same was not recorded in the register's office until December 3, 1901. That the stock so issued to *Eichert* and *Werle*, respectively, was paid for by their conveying and transferring to the company property belonging to them. That February 13, 1901, the company was embarrassed for want of working cash capital and ready funds. That, claims being made that the property which *Eichert* and *Werle* put into the corporation was not worth as much as the stock issued to them, respectively, they each on February

13, 1901, reduced the amount of their stock one half, and surrendered the same to the company, under agreements to the effect that, if for the ensuing three years the net profits of the company should be twenty per cent. each year, then the company would reissue to them, respectively, one half of the stock so surrendered, or pay to them its nominal value in cash. That the whole amount of stock outstanding on that day was 432 shares of $100 each, of which *Eichert* owned 100 shares and *Werle* fifty shares. That September 21, 1901, the company was indebted to the amount of $31,587.96 and pressed for payment, and so called a meeting of its stockholders for October 2, 1901, to consider ways and means of continuing business, and it was then decided to raise money by bonding the property, and, if that should be impossible, then to offer the property for sale at not less than the amount of such indebtedness, and thereupon adjourned to October 7, 1901. That, it having been found at such adjourned meeting that not more than two thirds of the amount requisite could be raised on bonds of the stockholders and indorsers, it was determined by a vote of 305 to 55 to sell the property, and thereupon a special stockholders' meeting was called for October 21, 1901, to vote on the resolution for sale, which resolution was, at such special meeting on the day and year last mentioned, adopted by a vote of 315 to 50, the plaintiff being the only person voting in the negative. That the resolution authorized, empowered, and directed the directors to sell the property of the company, or so much thereof as might be necessary, at the highest price obtainable, within twenty days, but not for less than the amount of such indebtedness, and that in making such sale each and all of the then present stockholders should first have the opportunity of purchasing the same after ten days' notice of such proposed sale had been given to them. That pursuant to such resolution, and more than ten days after such notice, and on November 11, 1901, the directors accepted the bid of the de-

fendant *Kuckuk* for the amount of such indebtedness, and November 25, 1901, was fixed as the date for making the conveyance and transfer of the property to him, and notice thereof was then given to all of the stockholders according to the resolution of October 21, 1901. Prior to such sale and on November 25, 1901, this action was commenced and a temporary injunction therein granted, which on hearing was dissolved by the circuit court. The articles of incorporation, as amended January 21, 1901, were duly recorded in the register's office December 3, 1901. Thereupon and pursuant to the authority given by the stockholders October 21, 1901, and the action of the board of directors November 11, 1901, pursuant thereto, a deed and bill of sale of all the property of the company were duly executed by the vice-president and secretary of the company and then delivered to the defendant *Kuckuk,* in consideration of $31,587.96 by him paid; the same being the total amount of the company's liabilities. December 13, 1901, the plaintiff served a second amended and supplemental complaint, alleging such sale, transfer, and conveyance, and praying that the same should be set aside as fraudulent, unauthorized, and void, and that the property be reconveyed to the company, and for an injunction. The defendants answered, and, among other things, alleged in effect that since the commencement of the action they had discovered that the articles as amended January 21, 1901, had not been filed or recorded in the register's office until December 3, 1901; that pursuant to the resolution of October 21, 1901, the plaintiff and every other stockholder had had full opportunity to share therein, and the answering defendants therewith offered to the plaintiff and other interested persons, not defendants herein, to convey to him or them the property on receipt of the amount so paid therefor, with legal interest. The court found, among other things, that the plaintiff was one of the directors of the company, and acted as such from the time of its first organization down to the com-

mencement of this action; that at the time of such sale and conveyance to *Kuckuk* the company was greatly embarrassed by the existence of pressing debts of the amount stated, and was unable to pay the same or any considerable portion thereof; that the evidence failed to show any fraud or fraudulent practice, or undue haste, in or about the sale and conveyance of said property, or in the proceedings leading up to such sale and conveyance; that the three years for the reissue of the fifty shares of stock to the plaintiff, as so agreed February 13, 1901, had not expired; that the evidence failed to show any want of consideration, or undue advantage, or fraud or fraudulent practice, in respect to the plaintiff's surrender or cancellation of his stock or his consent thereto; that the evidence failed to show any mismanagement of the property or the affairs of the company, or otherwise; that since the sale and conveyance to *Kuckuk* the property had all been conveyed to a corporation since organized.

As conclusions of law the court found, in effect, that the failure of the defendant company to record its articles as amended January 21, 1901, until December 3, 1901, did not affect the proceedings and acts of the defendant company mentioned; that the company had a legal and valid organization and existence prior to that amendment, and its authority and power were not lost nor ceased thereby, nor made illegal or void by reason of such failure, and that the plaintiff was estopped from questioning the regularity of any of such proceedings; that such sale and conveyance to *Kuckuk* should be sustained by the interlocutory judgment and decree of the court; that the written contract of February 13, 1901, for the surrender and cancellation of fifty shares of the plaintiff's stock, should be sustained by such interlocutory judgment and decree; and that no sufficient grounds for the appointment of a receiver nor for the issuing of an injunction herein existed, and therefore the same were denied. The interlocutory judgment, from which the appeal was taken as

mentioned, was based upon and is in accordance with the
facts and conclusions of law thus stated.

For the appellant there was a brief by *E. B. Lord, Carl
H. Mueller,* and *Brown, Pradt & Genrich,* and oral argument
by *Mr. Lord.*

For the respondents there was a brief by *Kreutzer, Bird &
Rosenberry,* and oral argument by *C. B. Bird.*

CASSODAY, C. J.  1. It is found by the court, and is un-
disputed, that the plaintiff was one of the directors of the
defendant company, and as such acted with the board of di-
rectors continuously from the time the company was first
organized down to the commencement of this action, being a
period of more than twenty-one months.  During that time
he had full knowledge of the several meetings of the stock-
holders mentioned in the foregoing statement, and the pro-
ceedings and action of such meetings, and the several meet-
ings and actions of the board of directors.  There is no
ground for claiming any fraud, or deceit, or circumvention, or
undue influence practiced by the defendants, or any of them,
on the plaintiff in any of the transactions mentioned in the
foregoing statement.  After a year's experience the com-
pany was found to be greatly embarrassed for want of funds
to pay its debts and continue the business.  The pressure
for the payment of debts by the creditors of the company
was such as to result in the holding of several meetings by
the stockholders of the company to devise ways and means for
paying the debts of the company and continuing its business.
The raising of money for such purposes under such circum-
stances by levying an assessment upon the stockholders of the
company could not be resorted to, for the simple reason that
none of the stock was assessable.  After repeated consulta-
tions the attempt was made to raise the requisite amount of
money by borrowing the same and pledging the property of
the company as security; but it was found that no more than

about two thirds of the amount of the indebtedness could be thus raised, to say nothing about working capital. Finally, to "avoid judgment" in favor of the creditors, "or bankruptcy proceedings," at a special stockholders' meeting called for the purpose and held October 21, 1901, the resolution mentioned in the foregoing statement was adopted by a vote of 315 to 50; the plaintiff being the only person voting in the negative. The question presented is not whether the management and administration of the affairs of the company were the wisest possible. It is enough to know that the proceedings had, the conclusions reached, and the subsequent action of the board of directors in obeying and giving effect to such resolutions seem to have been free from any and all fraud, deceit, circumvention, or undue influence, and made in good faith and with the purpose of safeguarding the rights and interests of all the stockholders.

The principal contention seems to be that the conveyance of the entire property of the company, pursuant to the authority, power, and direction thus given by the stockholders, to one of their number, *Kuckuk,* and by him conveyed to a new corporation, the Wausau Sandpaper Company, organized by him and other stockholders for the purpose, was in legal effect a conveyance directly to themselves, and hence void in law. The right to make such conveyance, when so authorized, empowered, and directed, cannot be seriously doubted. Stripped of verbiage not applicable here, the statute declares that:

"Every such corporation . . . shall have the powers of a corporation conferred by these statutes necessary or proper to conduct the business or accomplish the purposes prescribed by its articles, . . . and may, by a vote of a majority of the stock given at any regular meeting or at any special meeting duly called for the purpose, sell and convey or authorize to be conveyed all or any portion of the property owned by it, whether real, personal or mixed." Sec. 1775, Stats. 1898.

This court has had occasion from time to time to consider the language thus quoted, but has never questioned the power to so convey when so authorized. *Shoemaker v. Washburn L. Co.* 97 Wis. 585, 594, 595, 73 N. W. 333; *Consolidated W. P. Co. v. Nash,* 109 Wis. 490, 498, 85 N. W. 485; *Marvin v. Anderson,* 111 Wis. 387, 392, 393, 87 N. W. 226.

2. It is contended, moreover, that the transaction was void as a matter of law, because the sale and conveyance was made to a stockholder of the corporation. But, as indicated, it was in good faith and with the knowledge of all the stockholders, each one of whom was at liberty to bid on the sale and become a purchaser if he saw fit to do so. The company could only sell to some one willing to purchase. In this last case (*Marvin v. Anderson,* 111 Wis. 387, 87 N. W. 226) it was held that "a solvent, going corporation has the same right to sell its property in the regular course of business, regardless of whether the vendee is a stockholder of the corporation, as a natural person." So it has been held that a corporation may make a valid assignment of all its property and assets for the payment of its debts in the manner and form and to the effect prescribed by the statute. *Garden City B. & T. Co. v. Geilfuss,* 86 Wis. 612, 616, 57 N. W. 349. So it has been held that "the board of directors of an insolvent corporation has power to make a voluntary assignment of all its property for the benefit of its creditors, without the authority or consent of its stockholders, unless restrained by its charter or other legal enactment." *Goetz v. Knie,* 103 Wis. 366, 369, 79 N. W. 401, 402. So it has been held that "an officer and director of a going corporation may purchase its outstanding obligations at a discount for his own benefit, and enforce them in full, where he owes no duty to the corporation, inconsistent with such purchase, to act for its benefit." *Glenwood Mfg. Co. v. Syme,* 109 Wis. 356, 362, 85 N. W. 432, 434. No creditor is here complaining, but only a stock-

holder, who had the same right and opportunity to purchase as any other stockholder.   The result of the transaction was to pay and satisfy all the debts of the corporation.   It was, in effect, for the benefit of the creditors of the corporation. The case presented fails to show any unlawful diversion of the property of the corporation by the majority of the stockholders which entitles the plaintiff, as a minority stockholder, to any relief in equity.   *Rothwell v. Robinson,* 44 Minn. 538, 47 N. W. 255; *Skinner v. Smith,* 134 N. Y. 240, 31 N. E. 911.

3. Nor do we think the sale and conveyance should be set aside merely because there was a delay of about ten months in recording the amendment to the articles of incorporation which authorized the increase of the capital stock and the number of directors from three to five.   The amendment was recorded on the day the conveyance was made.   The delay was a mere inadvertence.   The five directors were all chosen by the stockholders and acted as such, apparently without any objection from any one or any question being made as to their right to so act; and they acted in pursuance of authority, power, and direction expressly given by the stockholders themselves.   No one questions their eligibility to hold the office. It is well settled that even

"where a person not eligible to the office is declared elected, and no stockholder objects or takes legal proceedings to test the right to the office, and such person is allowed to perform the duties of his office, he becomes an officer *de facto.*   As such his acts cannot be objected to on the ground that he was not a legally elected director.   Neither corporate creditors, nor the corporation, nor the stockholders, nor the director himself is allowed to raise this objection in that manner.   The remedy is to oust him by *quo warranto* or to enjoin him as a usurper.   But after he is allowed to become a *de facto* director his title to office cannot be attacked collaterally, nor can his acts be repudiated on that ground.   A director, as a *de facto* director, may bind the company by his acts, if allowed to continue in his position."   2 Cook, Corporations (5th ed.) § 623.

This is in harmony with the rulings of this court. *Heinze v. South G. B. L. & D. Co.* 109 Wis. 99, 105, 85 N. W. 145; *Barthell v. Hencke,* 99 Wis. 660, 662, 75 N. W. 952; *Fadness v. Braunborg,* 73 Wis. 257, 282–286, 41 N. W. 84. It is conceded that the company was legally incorporated and organized and continued as such corporation during all the time in question. We find no ground for disturbing the judgment.

*By the Court.*—The judgment of the circuit court, appealed from, is affirmed.