J. H. LANE & CO. et al. v. MAPLE COTTON MILLS et al. J. H. LANE & CO. v. HAMER COTTON MILLS et al. TALLMAN v. DILLON COTTON MILLS et al.

(Circuit Court of Appeals, Fourth Circuit. September 14, 1915.)

Nos. 1362–1364.

1. CORPORATIONS ⚹⚹584—SALE OF ASSETS—SUBSEQUENT CONSOLIDATION—STATUTES.

The South Carolina statutes authorize a majority of the stockholders to dissolve a corporation and to sell its assets, but make no provision for the consolidation of corporations. The majority stockholders of three cotton mills, with an aggregate indebtedness of over $500,000, without credit, and in need of capital over the objection of minority stockholders, directed a sale of their assets and a dissolution, and upon a sale at public auction where the minority stockholders had opportunity to bid, bought them in and assigned their bids to a corporation which they had organized, which was to issue certificates of indebtedness for the indebtedness of the old corporations and for a working capital, and its own stock for that of the old corporations. *Held*, on bill to set aside the sale, that in such case the majority acted for the corporation, and were trustees for all the stockholders, and could not use their power for their own advantage to the detriment of the minority, but that it could not be said that their discretion did not extend to the sale and practical consolidation.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2343–2347; Dec. Dig. ⚹⚹584.]

2. CORPORATIONS ⚹⚹584—SALE OF ASSETS—BIDS.

In anticipation of a sale of a corporation's assets, any number of stockholders may combine to protect themselves by bidding at the sale, if they allow all other stockholders the privilege of joining with them; but they cannot deprive other stockholders of the privilege of bidding in common to prevent a sacrifice of the property, or to promote a merger as a means of procuring money and credit necessary to continue the corporate business.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2343–2347; Dec. Dig. ⚹⚹584.]

3. CORPORATIONS ⚹⚹584—SALE OF ASSETS—SETTING SALE ASIDE.

Minority stockholders were not in a position to set aside a public sale of a corporation's assets authorized by its majority stockholders on the

———————

⚹⚹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ground that it did not bring its full value, where their notice that they would contest the sale had the effect to drive off bidders, and since inadequacy of consideration will not avoid the sale where no advantage is taken of the minority and they are invited to and able to bid.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2343–2347; Dec. Dig. ☞584.

Rights of minority stockholders as to management of corporate affairs, see note to Wheeler v. Abilene Nat. Bank Bldg. Co., 89 C. C. A. 482.]

**4. APPEAL AND ERROR ☞169—REVIEW—NECESSITY OF OBJECTIONS.**

A point not presented to the court below, and passed on, cannot be considered on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1018–1034; Dec. Dig. ☞169.]

Appeals from the District Court of the United States for the Eastern District of South Carolina, at Charleston; Henry A. M. Smith, Judge.

Bills by J. H. Lane & Co. and John M. Tallman against the Maple Cotton Mills and others, by J. H. Lane & Co. against the Hamer Cotton Mills and others, and by John M. Tallman against the Dillon Cotton Mills and others. Decree for defendants, and complainants appeal. Affirmed.

Dean Emery, of New York City (Huger, Wilbur & Guerard and Wm. C. Miller, all of Charleston, S. C., and William H. Fain, Kellogg, Emery & Cuthell, and Earle L. Beatty, all of New York City, on the brief), for appellants.

H. J. Haynsworth, of Greenville, S. C., and J. B. Gibson, of Dillon, S. C. (Haynsworth & Haynsworth, of Greenville, S. C., and Gibson & Muller, of Dillon, S. C., on the brief), for appellees.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

WOODS, Circuit Judge. This appeal is from a decree of the District Court refusing to set aside, at the instance of J. H. Lane & Co. and John M. Tallman, minority stockholders, a sale of the Dillon Cotton Mills, Maple Cotton Mills, and Hamer Cotton Mills, made in pursuance of a resolution of the stockholders. J. H. Lane & Co. owned 66 shares, of the par value of $6,600, in the Maple Cotton Mills, 40 shares, of the par value of $4,000, in the Hamer Cotton Mills, and none in the Dillon Cotton Mills. John M. Tallman owned 10 shares, of the par value of $1,000, in the Maple Cotton Mills, 30 shares, of the par value of $3,000, in the Dillon Cotton Mills, and none in the Hamer Cotton Mills. The aggregate capital stock of the three mills was $344,800, and the aggregate holdings of Lane & Co. and Tallman in the three mills was $14,600, about one twenty-third of the whole. The Dillon Cotton Mills and Maple Mills were located at Dillon, and the Hamer Mills at Hamer, about six miles distant. W. M. Hamer was president of all of them. The following statements of the condition of the mills, taken from the books, were submitted by the president to the stockholders at a joint meeting, March 29, 1911:

### Dillon Cotton Mills.

#### General Balance Sheet, August 31, 1910.

##### Assets.

| | |
|---|---:|
| Property and plant | $181,706.68 |
| Inventories, bills receivable, etc. | 88,165.16 |
| Due by banks | 10,325.73 |
| Deferred | 1,062.99 |
| Total | $281,260.56 |

##### Liabilities.

| | |
|---|---:|
| Capital stock | $146,300.00 |
| Bills payable, accounts, etc. | 84,551.68 |
| Deferred | 1,495.37 |
| Surplus | 48,913.51 |
| Total | $281,260.56 |

### Maple Cotton Mills.

#### General Balance Sheet, August 31, 1910.

##### Assets.

| | |
|---|---:|
| Property and plant | $303,144.08 |
| Inventories, bills receivable, etc. | 165,332.83 |
| Due by banks | 20,219.95 |
| Deferred | 2,130,68 |
| Total | $490,857.54 |

##### Liabilities.

| | |
|---|---:|
| Capital stock | $ 98,500.00 |
| Bills payable, accounts, etc. | 243,793.41 |
| Deferred | 5,716.78 |
| Surplus | 142,817.35 |
| Total | $490,857.54 |

### Hamer Cotton Mills.

#### General Balance Sheet, July 1, 1910.

##### Assets.

| | |
|---|---:|
| Property and plant | $256,734.79 |
| Other assets | 61,400.00 |
| Inventories | 62,451.90 |
| Current assets | 11,529.98 |
| Deferred assets | 3,686.98 |
| Total | $395,803.65 |

##### Liabilities.

| | |
|---|---:|
| Capital stock | $100,000.00 |
| Due stockholders | 61,400.00 |
| Current liabilities | 211,029.13 |
| Deferred liabilities | 1,651.07 |
| Surplus | 21,723.45 |
| Total | $395,803.65 |

On their face these statements show the value of stock to be above par. But the testimony of the president was to the effect that the credit of the mills was such that the debts could not be carried without his personal indorsement, which he was no longer willing to give. There was no denial of this precarious condition of the mills, and it seems to us

the pivotal fact in the case. Confronted with depression in the Southern cotton mill industry, with an aggregate indebtedness of $548,237.44, which the mills could not meet, and with the necessity for capital to run the mills, which they could not get, the stockholders undertook to devise a plan which would avert threatened disaster to properties which seemed to be of very considerable value above the indebtedness. The first plan undertaken, under the leadership of Hamer, the president, was a consolidation of the three mills, with the notion that the consolidation would reduce expenses, and that the new corporation would have credit to carry the indebtedness and provide capital for running expenses. This scheme was entered upon, and for the purposes of consolidation a new corporation was chartered and organized under the name of the Dillon Mills; but the proposed consolidation was enjoined by the District Court, at the instance of the complainants in this case on the ground that the statutes of South Carolina made no provision for consolidation of such corporations.

The plan of dissolution and liquidation was then undertaken, and on January 16, 1912, the stockholders of the several corporations met and passed resolutions directing a sale of all the corporate assets, and liquidation and dissolution of the corporations in accordance with the South Carolina statute. The complainants were represented by counsel and objected to the resolution providing for sale and dissolution on these grounds:

"First, that it is not planned in good faith to go out of business, but for the real purpose of transferring the assets of the company to another company and continuing the business; second, that it is not in the interest of the stockholders, and will result in a sacrifice of their property."

The minutes of the meetings show a large majority of the stockholders present. No objection was made to the validity of the proxies, and none is alleged in the bill. The complainants applied to the District Court for an injunction against the sale, but the application was refused; and the sales were made at public auction on March 7, 1912—the Dillon Mill plant to H. J. Haynsworth, who is attorney for the defendants, for $50,000; the Maple plant to W. M. Hamer, for $155,000; and the Hamer plant to W. T. Bethea, for $190,000. These bids were all assigned to the new corporation, the Dillon Mills, and the property was conveyed to it. The new corporation took the property on the terms which were intended to be effective, had the original plan of consolidation been carried out, namely, that the new corporation should issue certificates of indebtedness to the amount of $300,000 to provide for indebtedness of the old corporations, which could not be paid, and for working capital, and issue its own stock for that of the several mills at a relative valuation based on the book value of the old stock. The complainants were present at the sale and gave notice that its validity would be contested.

[1] The appellants' first position is that there was no real sale and dissolution, but a consolidation contrary to the law of the state. The statute of the state confers on the majority of the stockholders the power to sell the assets and dissolve the corporation. One who takes stock in a corporation in the state does so in the face of the statute, and

takes his stock subject to that power of the majority. Judicial authority does not extend to enjoining the exercise of a right conferred by legislative authority. The courts cannot pass upon the question of expediency of dissolution and sale, for that is the very question which the Legislature has authorized the majority of the stockholders to decide. Judicial inquiry is limited to the regularity of the proceedings and the good faith of the majority. In such an inquiry into the good faith of the majority a guiding principle is that, in taking corporate action under the statute, the majority act for the corporation, are therefore trustees for all the stockholders, and cannot use their statutory powers for their own advantage to the detriment of the minority. The principles stated are supported by many authorities. Windmuller et al. v. Standard Distilling & Distributing Co. (C. C.) 114 Fed. 491; Slattery v. Greater New Orleans Realty & Development Co. et al., 128 La. 871, 55 South. 558; Oglesby v. Attrill, 105 U. S. 605, 26 L. Ed. 1186; Nashua Savings Bank v. Anglo-American Land, Mortgage & Agency Co., 189 U. S. 221, 23 Sup. Ct. 517, 47 L. Ed. 782; Equitable Real Estate Co., Limited, v. National Surety Co. et al., 133 La. 448, 63 South. 109.

The courts cannot say that the discretionary power of the majority conferred by the statute does not extend to the dissolution of a prosperous corporation, or to a dissolution which will probably result in practical consolidation by the purchase of the property by another corporation. The fact that the state has not provided for consolidation without a dissolution of the corporation and sale of the property by no means implies that there is any policy of the state against dissolution and sale resulting in consolidation. A sale by trustees carries not only the right, but the duty, to sell to anybody who offers the highest price; and it is of no consequence that the purchaser intends to carry the property into another corporation, and pay his bid by the stock of the new corporation, if the persons entitled to the proceeds of sale agree to take that in payment. It is true that the dissolution of a prosperous corporation without fair reason may be evidence for consideration in deciding whether the dissolution was not entered upon for a fraudulent purpose. So, also, where no just cause appears for dissolution and sale, the fact that the dissolution and sale were expected to result in merger into another corporation, and that they did actually so result, to the detriment of the minority stockholders, may be evidence of bad faith.

[2] But these conditions do not exist here. There was the necessity for money and credit which the mills could not obtain; and some change was absolutely essential to the conduct of the business. The plan of dissolution and sale with the formation of a new corporation to protect the property from sacrifice at the sale by consolidation may not have been a wise one, but there is nothing in the record to show that it was not taken in good faith. The complainants were invited to join in the scheme on equal terms and participate in any advantage which would accrue to the stockholders, or to suggest some other plan of relief. They declined to co-operate or to make any suggestion. It will hardly be denied that in anticipation of a sale any number of stockholders have a right to combine to protect themselves by bidding at the sale, if they allow all other stockholders the privilege of joining with them

in the enterprise. When no effort is made to shut him out, the minority stockholder can claim no protection except competition at a public sale.

The cases relied on by appellants gave relief to the minority stockholders on the ground that the forms of law had been used by the majority to get an advantage for themselves at the expense of the minority. Ervin & Others v. Oregon Ry. & Nav. Co. (C. C.) 27 Fed. 625; Jones et al. v. Missouri-Edison Electric Company et al., 203 Fed. 945, 122 C. C. A. 247; Barrett v. Bloomfield, 64 N. J. Eq. 425, 54 Atl. 543. There is language in Theis v. Spokane F. G. Co., 34 Wash. 23, 74 Pac. 1004, which lends color to appellants' position that a sale is invalid merely because the anticipated and actual result was consolidation; but there the dissolution was to be made of a prosperous corporation, and the assets turned over to a new corporation for the sole purpose of getting rid of a disagreeable stockholder, who refused to sell his stock. Without indorsing the doctrine of the case, we may say it is far from holding that a corporation which cannot manage its debts may not sell at public auction the corporate assets under statutory authority, when the expected result of the sale will be such consolidation with other corporations as to give equal opportunity of protection to all stockholders, and a new corporation strong enough to manage the indebtedness, and thus prevent suspension. In Riker v. United Drug Co., 79 N. J. Eq. 580, 82 Atl. 930, Ann. Cas. 1913A, 1190, the purpose and effect of the scheme proposed was to consolidate a prosperous New Jersey corporation with a corporation of Massachusetts, contrary to the laws of New Jersey. It is of some importance to observe that in the cases relied on the transfer was not made, as in this instance by a public sale.

It does not appear how far those bidding would have run the property; but the sales were open and fair, and everybody was free to bid. The complainants were offered the opportunity to come in with the majority; but they were not compelled to do so, as they would have been in case of consolidation without a public sale. They had a right to stand out and bid, or procure other bidders, and take their share of the proceeds of the sale. But their right did not extend to the point of depriving other stockholders of the privilege of bidding in common to prevent a sacrifice of the property, or to promote a merger as a means of procuring money and credit necessary to continuation of the business. Bowditch v. Jackson, 76 N. H. 351, 82 Atl. 1014, Ann. Cas. 1913A, 366; Werle v. Flint Co., 125 Wis. 534, 104 N. W. 743.

[3] It is true that the property did not bring its full value. But the plaintiffs are not in a position to have the sale set aside on that ground, since the notice given by them that the sale would be contested would drive off bidders. Inadequacy of consideration will not avoid a sale, where, as in this case, no advantage is taken of the parties complaining, and where they are invited to unite in the bidding, and are present and able to bid in their own interest.

[4] It was argued in this court that the sale was invalid, because the property was bid off by the trustees and their attorney at a sale made by themselves. The objection would, to say the least, be of most serious import, had it been made before the District Court, and error assigned in the court's finding on it. Michoud et al. v. Girod et al.,

45 U. S. 503, 11 L. Ed. 1076; Scottish-American Mtg. Co. v. Clowney, 70 S. C. 229, 49 S. E. 569, 3 Ann. Cas. 437; McCallum v. Grier, 86 S. C. 162, 68 S. E. 466, 138 Am. St. Rep. 1037. But the sale was treated by the District Judge as having been made to the Dillon Mills on behalf of the majority stockholders, and his opinion gives no intimation that objection was made on the ground that a trustee could not bid off property at his own sale. A point not presented to the court below, and passed on, cannot be considered by this court. Pine River Logging Co. v. United States, 186 U. S. 279, 22 Sup. Ct. 920, 46 L. Ed. 1164; Missouri Pacific Railway Co. v. Fitzgerald, 160 U. S. 575, 16 Sup. Ct. 389, 40 L. Ed. 536.

Affirmed.